UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| GAS NATURAL APROVISIONAMIENTOS, SDG, S.A., | ) )  ) 08 Cv. 1109 (DC) ) |
| Petitioner, | ) ) |
| - against - | ) ) |
| ATLANTIC LNG COMPANY OF TRINIDAD AND TOBAGO, | ) ) ) ) |
| Respondent. | ) ) ) |

---

**ATLANTIC LNG COMPANY OF TRINIDAD AND TOBAGO'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
VACATE THE ARBITRAL AWARD AND IN OPPOSITION TO
GAS NATURAL APROVISIONAMIENTOS SDG S.A.'S
AMENDED PETITION TO RECOGNIZE AND ENFORCE THE AWARD**


Dated: June 30, 2008
      New York, New York

MILBANK, TWEED, HADLEY &
MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005-1413
(212) 530-5000

Attorneys for Respondent
ATLANTIC LNG COMPANY OF
TRINIDAD AND TOBAGO

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

I.  LIBERALIZATION WAS THE ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ADVANCED BELOW, AND THE TRIBUNAL'S FINDING THAT LIBERALIZATION WAS EXPECTED BARRED ANY RELIEF .................................................................................................................. 1

    A.  The Tribunal Did Not Find that the U.S./Spanish Natural Gas Price Disparity was a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ................................................................. 3

    B.  The "Effects of Liberalization" do not Constitute a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ........................................................................ 4

II. THE TRIBUNAL'S "FINDING" CONCERNING THE "EFFECTS OF LIBERALIZATION" IMPERMISSIBLY REWROTE ARTICLE 8.5(a) ....................... 5

III. THE TRIBUNAL LACKED AUTHORITY TO IMPOSE ▇▇▇▇▇▇▇▇ ................. 8

    A.  The Award Imposes ▇▇▇▇▇▇▇ ............................................................................. 9

    B.  Both Atlantic and GNA Rejected a ▇▇▇▇▇▇▇ .................................................. 10

        1.  Atlantic ................................................................................................. 11

        2.  GNA ..................................................................................................... 13

IV. GNA IS NOT ENTITLED TO ATTORNEY'S FEES ................................................ 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*187 Concourse Assocs. v. Fishman,*
   399 F.3d 524 (2d Cir. 2005)...................................................................................................2

*Browning Debenture Holders' Comm. v. Dasa Corp.,*
   560 F.2d 1078 (2d Cir. 1977)................................................................................................15

*Commercial Risk Reinsurance Co. v. Sec. Ins. Co.,*
   526 F. Supp. 2d 424 (S.D.N.Y. 2007).....................................................................................8

*Hall Street Assoc. v. Mattel, Inc.,*
   128 S. Ct. 1396 (2008)............................................................................................................2

*Halliburton Energy Servs. v. NL Indus.*, No.
   H-05-4160, 2008 U.S. Dist. LEXIS 26299 (S.D. Tex. Mar. 31, 2008) ..................................2

*Hardy v. Walsh Manning Sec., L.L.C.,*
   341 F.3d 126 (2d Cir. 2003)....................................................................................................3

*Hill v. Staten Island Zoological Soc'y, Inc.,*
   147 F.3d 209 (2d Cir. 1998)....................................................................................................9

*Hunt v. Commodity Haulage Corp.,*
   647 F. Supp. 797 (E.D.N.Y. 1986) .......................................................................................14

*In re Arbitration between Carina Int'l Shipping Corp. & Adam Maritime Corp.,*
   961 F. Supp. 559 (S.D.N.Y. 1997) .........................................................................................6

*Integrity Ins. Co. v. Am. Centennial Ins. Co.,*
   885 F. Supp. 69 (S.D.N.Y. 1990) ...........................................................................................9

*Iran Aircraft Indus. v. Avco Corp.,*
   980 F.2d 141 (2d Cir. 1992)..................................................................................................14

*Parsons & Whittemore Overseas Co. v Société Générale de L'Industrie du
   Papier,* 508 F.2d 969 (2d Cir. 1974).......................................................................................9

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators'
   Warehouse Independent Truck Drivers Union,*
   611 F.2d 580 (5th Cir. 1980) ..................................................................................................9

*Saudi Iron & Steel Co. v. Semicor USA, Inc.*, No. 97 Civ. 5976, 1977
   U.S. Dist. LEXIS 20336 (S.D.N.Y. Dec. 27, 1997) .............................................................14

*Sears, Roebuck & Co. v. Teamsters Local Union No. 243,*
   683 F.2d 154 (6th Cir. 1982) ..................................................................................................6

*Sunoco, Inc. v. Honeywell Int'l, Inc.,*
   No. 05 Cv 7984, 2006 U.S. Dist. LEXIS 11392 (S.D.N.Y. Mar. 22, 2006).........................8

*Telenor Mobile Commc'ns v. Storm LLC,*
   524 F. Supp. 2d 332 (S.D.N.Y. 2007)........................................................................9, 12, 13

*United Paperworkers Int'l Union v. Misco, Inc.,*
   484 U.S. 29 (1987)..................................................................................................................6

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) .................................................................................................. 6

## **STATUTES**

9 U.S.C. § 10(a)(4) ........................................................................................................................ 2
9 U.S.C. § 207 ............................................................................................................................. 14

## **PRELIMINARY STATEMENT**

Atlantic submits this reply memorandum of law: (1) in further support of its motion, dated April 16, 2008, to vacate the Final Award as clarified and corrected on March 27, 2008 (the "Final Award");[1] and (2) in opposition to GNA's June 16, 2008 Amended Petition (the "Amended Petition") for an order recognizing and enforcing the Final Award, and GNA's June 16, 2008 Memorandum of Law in support thereof ("6/16/08 GNA Mem").

GNA's plea that the new pricing scheme remain in force, because it is supposedly "fair and equitable" (it is not) and was crafted by "experienced" arbitrators, *e.g.*, 6/16/08 GNA Mem 1-3 & n.4, is irrelevant. There are two questions before this Court: whether the Tribunal had authority to change the Contract Price in the first place, and whether, if it had such authority (it did not), it could order a pricing formula that both Parties said was not allowed.

GNA admits that the Tribunal's authority was limited by the specific preconditions in Article 8.5(a) of the Contract.[2] As Atlantic has shown, the Tribunal failed to find that the preconditions were satisfied. Worse still, the Tribunal rewrote the stated preconditions to craft a new "test" that was never agreed by the Parties, and that served as the springboard for unauthorized "relief." Regardless of the arbitrators' experience, the Final Award went far beyond their limited authority, and vacatur is warranted under the FAA.

## **I.   LIBERALIZATION WAS THE ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ADVANCED BELOW, AND THE TRIBUNAL'S FINDING THAT LIBERALIZATION WAS EXPECTED BARRED ANY RELIEF**

GNA agrees with Atlantic that the Tribunal was not authorized to grant relief unless it first found that the two preconditions set forth in Article 8.5(a) were satisfied:

---

[1] Atlantic incorporates by reference its April 16, 2008 Memorandum of Law ("4/16/08 Atlantic Mem").

[2] *See id.* 15 ("Tribunal ... was empowered ... to fashion a 'fair and equitable' Contract Price *if the preconditions were satisfied*.") (emphasis added).

(1) ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨, beyond the control of the Parties, had ▨▨▨▨ ▨▨▨▨ as compared to what the requesting Party reasonably expected in 1995; *and* (2) as a consequence of those changed circumstances, the Contract Price no longer reflects the value of Natural Gas in the Buyer's end user market. *See* 6/16/08 GNA Mem 19; SOD and CC ¶¶ 98-99.[3] As was conclusively shown in Atlantic's April 16 Memorandum of Law, the Tribunal determined that the change in circumstances advanced before the Tribunal – liberalization of the Spanish natural gas market – was in fact expected by both Parties. *See* 4/16/08 Atlantic Mem 15 ("'the liberalized market was foreseen by both sides'") (quoting Final Award ¶ 44). Under the law, therefore, the Tribunal was powerless to impose a revised price. *See 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (where remedy is contingent on the satisfaction of a precondition, relief cannot be awarded by arbitrator that found precondition not met).[4]

Unable to dispute this showing, GNA argues that neither the Parties nor the Tribunal relied on the fact of liberalization to satisfy the first precondition of Article 8.5(a), *see* 6/16/08 GNA Mem 6, 24; and contends that the Tribunal instead found two other supposed ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ that satisfied the first precondition in Article 8.5(a), *see id.* 21-24. GNA's claims cannot withstand scrutiny.

---

[3] During the arbitration GNA further broke down the two preconditions into six constituent items, insisting that "*each and every one* of these six preconditions *must* be satisfied for an alleged change to be considered the basis for a revised Contract Price." SOD and CC ¶¶ 98-99 (emphasis added).

[4] The Tribunal thus also proceeded in manifest disregard of the law agreed upon by the Parties, *i.e.*, the elements set forth in Article 8.5(a). *See* 4/16/08 Atlantic Mem 16, n.38. Citing *Hall Street Assoc. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008), GNA contends that "manifest disregard of the law" is no longer "an independent ground for seeking vacatur under the FAA," and that manifest disregard thus "should not be considered independent of Atlantic's other arguments for vacatur." 6/16/08 GNA Mem 15-17. While cases since *Hall Street* disagree with GNA, *e.g.*, *Halliburton Energy Servs. v. NL Indus.*, No. H-05-4160, 2008 U.S. Dist. LEXIS 26299, *46-49 (S.D. Tex. Mar. 31, 2008), GNA's "point" here is a complete red herring. Atlantic has never asserted that "manifest disregard of the law" is a separate and independent reason for vacatur in this case; to the contrary, Atlantic specifically indicated that, here, "manifest disregard of the law" is part-and-parcel of the Tribunal having exceeded its authority, a specific ground for vacatur recognized under the FAA. *See* 4/16/08 Atlantic Mem 16, n.38; 9 U.S.C. § 10(a)(4).

    **A.**    **The Tribunal Did Not Find that the ▮/Spanish Natural Gas Price Disparity was a ▬▬▬▬▬▬▬▬▬▬▬**

GNA argues that the Tribunal found that "the smaller increase in natural gas prices in Spain relative to those in ▬▬▬, which resulted in GNA entering into a firm resale contract with ▬ to place substantially all Train 1 LNG in ▬▬▬," satisfied the first prerequisite of Article 8.5(a). *See* 6/18/08 GNA Mem 6. The first (and dispositive) problem with this argument is that the Tribunal made no such finding.[5] GNA's opposition contains no citation to any part of the Final Award in which this purported "finding" appears. Accordingly, the Court should not further consider this contention.

GNA points the Court to evidentiary fragments showing that GNA entered into a contract in 2002 committing to resell all of its Train 1 LNG for delivery to ▬▬▬, where prices were higher than they were in Spain. *See* 6/18/08 GNA Mem 22-23. But this "showing" is irrelevant. It is not the Court's role to search the record for, or evaluate, evidentiary support for findings that the arbitrators did not make. *See Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 131 (2d Cir. 2003).[6]

---

[5] In fact, GNA strenuously opposed such a finding. *First,* GNA's lead negotiator in 1995 testified that he specifically foresaw that liberalization of the Spanish natural gas market would make Spanish natural gas prices lower than U.S. natural gas prices, *see Escudero,* 819:19-820:22; 835:12-836:7 ("If someone asked me in 2002, do you think that your expectations about the gas prices in the ▬▬ or the steps of liberalization in Spain are going according to your thinking, my answer, yes, more or less"). *Second,* GNA argued that a change in U.S. natural gas prices was ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ as the Contract requires. *See* GNA SOD and CC ¶ 116. *Third,* GNA argued that diversion of cargoes to the ▬▬▬▬ was not "unexpected," but rather was specifically contemplated by Article 2.6 of the Contract. *See* 8/14/06 GNA Mem ¶ 41. For its part, Atlantic never claimed that GNA's diversions to ▬▬▬ were an unexpected ▬▬▬▬▬▬▬▬▬ under Article 8.5(a).

[6] By its terms, moreover, the purported "finding" that the Tribunal never made would not have satisfied the first precondition under Article 8.5(a) because, *inter alia*, it involves a volitional act by GNA (contracting to resell the Train 1 LNG for delivery to ▬▬▬) and hence was not "beyond the control of the Parties," as the Contract requires.

B.  The "Effects of Liberalization" do not Constitute a ▮▮▮▮

GNA also argues that the Tribunal found that "the unexpected *economic effects* of liberalization" – specifically "'natural gas prices rising at a slower rate than ▮▮▮,'" *see* 6/18/08 GNA Mem 6 (quoting Final Award ¶ 45) (emphasis in original), satisfied the first precondition of Article 8.5(a). In fact, the Tribunal did not make this "finding." Rather, as shown in Atlantic's opening memorandum, and in Point II, *infra*, after determining that the first precondition was not satisfied, the Tribunal effectively rewrote the Contract – impermissibly – to provide a single precondition to a reopener: disparity between the Contract Price and the value of natural gas. In so doing, the Tribunal exceeded its authority.

Indeed, GNA's current effort to suggest that, although liberalization was expected, the ensuing gas-to-gas competition and ▮▮▮▮ was not, is completely at odds with the position it took in the arbitration, and is entirely unprincipled and opportunistic. It is like saying that a thunderstorm was expected, but the wet streets it created were not. GNA stated repeatedly during the proceedings before the Tribunal that liberalization *itself* was the ▮▮▮▮ advanced by Atlantic, that liberalization was expected, and that therefore no relief could be had. As GNA's counsel put it:

> *[T]he fundamental change* that has occurred in Spain is that Spain has moved from a totally regulated market in 1995 to one that is largely unregulated now. That's true. *And the only real question ... is whether that was anticipated at the time. We say that it was .... Now, if there is no unanticipated change that is taking place, because liberalization was anticipated, this case is over. A condition precedent hasn't been satisfied. You don't go on.*

*GNA Counsel*, 161:13-163:5 (emphasis added).

Equally important, GNA argued specifically that the purported "effect" of liberalization on which the Tribunal focused – the creation of gas-to-gas competition, causing a

reduction in natural gas prices and thus ███████████████████████████ – *was the essence of liberalization, and was fully expected by GNA.*[7]

Indeed, even as it attempts to contrive a method by which the Tribunal *might* have satisfied the first precondition, GNA acknowledges the reality that liberalization, not some artificially separated "effect of liberalization," was the ████████████████. GNA itself asserts that the Tribunal's statement that *liberalization* "result[ed] in natural gas prices rising at a slower rate than ██████" was, in fact, the Tribunal "focusing" on whether *liberalization* "'disrupted the expected relationship between the Contract Price and the value of natural gas.'" 6/16/08 GNA Mem 22 (quoting Final Award ¶ 44). Thus, GNA admits that the Tribunal's findings as to the "effects" of liberalization related to the second precondition, not the first, and underscores that the ████████████████ that caused the price/value disparity satisfying the second precondition was liberalization. Accordingly, the Tribunal's finding that liberalization itself was expected was the end of the road, and it was not authorized to proceed further.

## II. THE TRIBUNAL'S "FINDING" CONCERNING THE "EFFECTS OF LIBERALIZATION" IMPERMISSIBLY REWROTE ARTICLE 8.5(a)

Atlantic has also established that in purporting to rely upon "the effects of liberalization," the Tribunal exceeded its authority by rewriting the terms of Article 8.5(a). It collapsed the first precondition (unexpected ████████████████████████████████) into

---

[7] GNA "expressly anticipate[d] that the Spanish market would become liberalized and allow for gas-to-gas competition," SOD and CC ¶ 111, and that the price of gas would therefore decline and ████████████ *see* SOD and CC ¶ 44, n.35 ("liberalization of the Spanish gas market opened up the market to new competitors and allows for gas-to-gas competition, thus causing downward pressure on prices in the market"); *id.* ¶ 108 ("liberalization of the Spanish gas market (and thus entry of new market competitors) was reasonably anticipated at the time that Atlantic agreed to the Contract Price"); *id.* ¶ 111 (Parties "expressly anticipate[d] gas-to-gas competition in Spain"); 3/7/07 GNA Mem ¶ 54 ("gas to gas competition (i.e., liberalization) was expected in 1995"); *id.* ¶ 70 ("Since the Spanish ... market is liberalized, gas competes with other gas – ████████████ ... the actual consumption of ████████ simply has *no proximate causal relationship with the price of natural gas in Spain*.") (emphasis added); *see also Escudero*, 819:19-820:22; 835:12-836:7.

the second (the Contract Price not reflecting the value of natural gas) and determined, contrary to the Parties' agreement, that satisfaction of the second alone was sufficient to permit it to impose a new Contract Price. *See* 4/16/08 Atlantic Mem 17-20.[8] GNA fails to respond to this argument with any reasoned analysis. Instead, in conclusory fashion, GNA contends that the Tribunal did not "rewrite" Article 8.5(a), but was "simply interpreting it," 6/18/08 GNA Mem 22, and GNA then references cases holding that arbitral *interpretation* of a contract term is not subject to review, *see id.* 10-12. GNA is wrong and its cases are irrelevant.

Arbitrators may interpret an ambiguous clause. But the Tribunal nowhere found that Article 8.5(a) was ambiguous. Also, GNA ignores settled law that "[a]n arbitrator's authority ... is at all times restricted by the parties' agreement," *In re Arbitration between Carina Int'l Shipping Corp. & Adam Maritime Corp.*, 961 F. Supp. 559, 565 (S.D.N.Y. 1997); that courts will "overturn an award where the arbitrator merely makes the right noises – noises of contract interpretation – while ignoring the clear meaning of contract terms," *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (internal quotations omitted); *see United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("arbitrator may not ignore the plain language of the contract"); and that "an arbitrator ... lacks authority to disregard or modify plain or unambiguous contract provisions," *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155-56 (6th Cir. 1982).

---

[8] As an aside, GNA quotes from Paragraph 24 of the Final Award as supposed evidence of the Tribunal "chiding" the Parties "for their use of the 'liberalization' label to attack, inconsistently, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as advanced by each other." *See* 6/16/08 GNA Mem 22, n. 16. But Paragraph 24 says absolutely nothing about the use of the "liberalization label," let alone that such use was inconsistent. Moreover, Paragraph 24 is one of several in which the Tribunal blatantly misstates the record. Atlantic never claimed, as Paragraph 24 erroneously states, that "GNA *should have* expected liberalization and, thus, there are not changed circumstances." Final Award ¶ 24 (emphasis added). Rather, Atlantic clearly pointed out that GNA *admitted*, and GNA's chief witness *testified*, that GNA in fact *did* anticipate liberalization and its effects, and thus could not, as a matter of law, argue that this was an unexpected change. *See supra* n.7; 10/12/07 Atlantic PHB2 ¶¶ 158-176; 4/16/08 Atlantic Mem 13-15. Thus, Paragraph 24 underscores the extent to which the Tribunal got it wrong.

Here, the Tribunal engaged in precisely this forbidden conduct. On at least four occasions, the Tribunal stated – contrary to the abundantly clear language in the Contract – that it was empowered to impose a new price upon satisfaction of a *single* precondition, that the Contract Price produced by the existing price formula did not track the value of natural gas:

- "The Tribunal concludes that the parties *expected that the formula chosen in Article 8.1 would adjust the Contract Price proportionally to the change in the value of natural gas*. If the actual operation of the Article 8.1 price formula and the value of natural gas had moved in parallel, then there would be no basis for an adjustment to the formula. However, a meaningful *departure* from the relationship *between the Contract price and the price of natural gas in the Buyer's end user market would <u>constitute the type of change</u> that Article 8.5(a) was intended to address*." Final Award ¶ 25.

- "Although the parties have based their arguments on the degree to which liberalization was expected, . . . *the Tribunal believes that <u>the crucial test</u> is whether the formula agreed in 1995 continues to track the value of natural gas*." Id. ¶ 42.

- "Although the liberalized market was foreseen by both sides, *<u>the real test</u> is whether those developments significantly disrupted the expected relationship between the Contract Price and the value of natural gas*." Id. ¶ 44.

- "The <u>*basic requirement*</u> of Article 8.5(a) [is] that *the formula in Article 8.1 does not reflect 'the value of Natural Gas in the Buyer's end user market*.'" Id. ¶ 46.

This was not "interpretation," it was a deliberate misreading of an unambiguous provision, resulting in a reformulation of Article 8.5(a) that was beyond the Tribunal's authority. The Tribunal replaced the clear, two-pronged inquiry of Article 8.5(a) with what it explicitly labeled the "real test" – the single inquiry into the second precondition, whether there was divergence between the Contract Price and the value of natural gas.[9] And when so doing, the Tribunal

---

[9] In line with this single-precondition focus, the Tribunal found "that the change in the 'value of natural gas' since 1995 when the Contract was signed has not been in accord with what either party expected" because "its change in value has not been proportionate to the change in the value of the index in the formula used in Article 8.1." Final Award ¶ 42. The Tribunal also "conclude[d] that the parties expected that the formula chosen in Article 8.1 would adjust the Contract Price proportionally to the change in value of natural gas," and that a "departure from the relationship between the Contract price and the price of natural gas in the Buyer's end user market would constitute the type of change that Article 8.5(a) was

expressly stated that it did not matter that the cause of the divergence was anticipated by the Parties – thus brazenly negating the first precondition of Article 8.5(a).[10]

Further, GNA ignores the Tribunal's conclusion, also *urged by GNA*, *see* 8/24/07 GNA PHB1 ¶ 126, that the unexpected ▮▮▮▮▮▮▮▮▮▮ (the first precondition) must be the *cause* of the Contract Price not reflecting the value of natural gas (the second precondition). *See* Final Award ¶¶ 5, 24. Since an event cannot cause itself, the "event" that satisfies the first precondition cannot be the same event that satisfies the second. But that is precisely the result of the Tribunal's reconstruction of Article 8.5(a). The Tribunal treated the same event – the failure of the Contract Price to move proportionately with market value – as *both* the requisite change *and* the requisite effect. This was clearly improper, and GNA nowhere disagrees.

### III. THE TRIBUNAL LACKED AUTHORITY TO IMPOSE ▮▮▮▮▮▮▮▮▮▮

Atlantic also has established that the Tribunal exceeded its authority in imposing ▮▮▮▮▮▮. Before rendering its award, the Tribunal specifically asked the Parties whether it could implement a ▮▮▮▮▮▮▮▮▮. In responding, the Parties *agreed* that such a pricing structure was improper and should not be imposed in this reopener. *See* 4/16/08 Atlantic Mem 20-25. Thus, the issue does not concern the general scope of arbitrators' remedial powers,

---

intended to address." *Id.* ¶ 25. As these statements show, the Tribunal abandoned any inquiry into the cause of the Contract Price/market value disparity (*i.e.*, the unexpected ▮▮▮▮▮▮▮▮▮▮), and found the mere existence of the disparity sufficient to warrant relief.

Contrary to GNA's suggestion, such conduct is not authorized by *Sunoco, Inc. v. Honeywell Int'l, Inc.*, No. 05 Cv 7984, 2006 U.S. Dist. LEXIS 11392 (S.D.N.Y. Mar. 22, 2006). There, Sunoco claimed that the arbitrator had exceeded his jurisdiction. Here, the Tribunal had jurisdiction to determine whether the preconditions of Article 8.5(a) were met. What it lacked was the authority to impose a new price if they were not. GNA's reliance on *Commercial Risk Reinsurance Co. v. Sec. Ins. Co.*, 526 F. Supp. 2d 424 (S.D.N.Y. 2007) is misplaced for the same reason. *See id.* at 432.

[10] The Tribunal not only ignored the clear language of the Contract, it also ignored (as GNA does now) settled New York law that a party may not be relieved of its contractual obligations by reason of matters that were known or expected by it at the time it executed the contract. *See* 4/16/08 Atlantic Mem 12, n.29 (citing cases). While the Parties could have contracted to avoid this principle of law, the terms of Article 8.5(a) underscore that it applies, requiring that any change advanced must have been reasonably *unexpected* by the Party seeking relief.

under Articles 8.5 and 18 of the Contract or otherwise, *see* 6/16/08 GNA Mem 1-3, 13-14, 25, but whether the arbitrators could ignore the agreement of the Parties when crafting relief.

   The Tribunal was not permitted to disregard the Parties' agreement and impose the ▮▮▮▮ structure anyway. GNA fails to address the fact that the Parties may, by their submissions, agree to circumscribe and limit the arbitrators' powers. *See Hill v. Staten Island Zoological Soc'y, Inc.*, 147 F.3d 209, 214 (2d Cir. 1998) ("Parties to an arbitration may … increase or limit the arbitrator's contractual authority by their express submission.") (cited by GNA); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580, 584 (5th Cir. 1980) (recognizing that scope of authority in initial contract may be modified by submissions at arbitration); *Parsons & Whittemore Overseas Co. v Société Générale de L'Industrie du Papier*, 508 F.2d 969, 977 (2d Cir. 1974) (where contract silent on awarding certain costs, "the request by each [party] for such an award for expenses amounts to tacit agreement on this point," and thus empowered tribunal).

   Instead of addressing this core issue, GNA makes essentially two arguments: (1) that the award does not impose ▮▮▮▮, and (2) that the award confers exactly the relief requested by Atlantic. *See* 6/16/08 GNA Mem 25-33. Neither argument has merit.[11]

  **A.** **The Award Imposes ▮▮▮▮**

   Despite GNA's invitation that it do so, *see* 6/16/08 GNA Mem 31-32, this Court need not dwell upon the exact parameters of the ▮▮▮▮ that the Parties rejected. The

---

[11] GNA also offers the false suggestion that Atlantic is seeking to impose a "baseball" style arbitration, *see id.* 25-26, or otherwise unduly limit the arbitrators' flexibility to fashion relief not specifically requested. Contrary to GNA's suggestion, Atlantic simply maintains that the Tribunal cannot impose relief – the ▮▮▮▮ scheme – that the Parties *specifically agreed* should not be imposed. *See Integrity Ins. Co. v. Am. Centennial Ins. Co.*, 885 F. Supp. 69, 71 (S.D.N.Y. 1990) (arbitrators "can exert no more control over parties than that which the parties, through their agreements, granted to the arbitrators."); *cf. Telenor Mobile Commc'ns v. Storm LLC*, 524 F. Supp. 2d 332, 359 (S.D.N.Y. 2007) ("arbitrator may not award relief expressly forbidden by agreement of the parties") (cited by GNA).

Tribunal itself defined the concept, asking the Parties if it could impose "█████ [for the Train 1 LNG] █████." 4/16/08 Atlantic Mem 23-24 & n.47 (quoting 6/20/07 Tribunal Letter, Item 4, Cavoli Declaration, Ex. 13). Given this definition by the Tribunal, it is simply wrong for GNA to claim that the Final Award is not "█████" but rather a "Contract Price based on a █████ *formula in all cases*, with the █████ █████." 6/16/08 GNA Mem 31 (emphasis added).

As Atlantic showed in its opening memorandum, *see* 4/16/08 Atlantic Mem 6 & nn.17, 25, there is no █████ price. There is simply the imposition of █████ █████. Under the new pricing mechanism, GNA pays █████ █████ for *all* Train 1 LNG sold to GNA in a given █████, depending on the volume of Train 1 LNG delivered █████. *See* Final Award ¶¶ 98-99, 109, 130, pp. 31-32.[12] These new price terms are precisely the type – █████ █████ – that Atlantic and GNA agreed, and told the Tribunal, should not be imposed.

### B. Both Atlantic and GNA Rejected a █████ Award

In addition to its efforts to incorrectly depict the imposition of a █████ as a mere █████, GNA tries to mislead the Court into believing that the relief awarded was precisely what Atlantic sought, and was not opposed by GNA. In so doing, GNA presents edited quotations from the arbitral proceedings that mischaracterize their meaning, and seeks to recast its own position in a manner that is squarely at odds with the position it actually expressed, clearly and unambiguously, to the arbitrators.

---

[12] While ignored by GNA, the Tribunal's own reasoning and statements make absolutely clear that, when the majority of Train 1 LNG is delivered to █████ █████ applies; █████. There is no █████ to speak of. *See* Final Award ¶ 130; *id* ¶ 99; *see also* 4/16/08 Atlantic Mem 6, n.17.


### 1. Atlantic

Atlantic has shown that the [REDACTED] imposed by the Tribunal was not authorized by Atlantic's proposal, *see* SOC ¶¶ 56-60; 8/24/07 Atlantic PHB1 ¶¶ 33-88; *Atlantic Counsel*, 2921:21-2922:25, for an [REDACTED] *see* 4/16/08 Atlantic Mem 28-29 & n.54. Ignoring that showing, GNA asserts that the substitution of a [REDACTED] price in place of the [REDACTED] price is the [REDACTED] Atlantic requested. *See* 6/16/08 GNA Mem 32 ("In essence, Atlantic received what it asked for").[13] This is nonsense, and should be rejected by the Court.

GNA dwells on a portion of footnote 44 of Atlantic's First Post-Hearing Brief stating that "The terms of Article 8.5 and 18 do not appear to expressly limit [the] award to the imposition of a [REDACTED]." 6/16/08 GNA Mem 25. But this in no way supports GNA's assertion that "Atlantic told the Tribunal that it was empowered," *id.*, to impose the [REDACTED] it did. Noting that the text of the Contract does not expressly require pricing based on a [REDACTED] is very different from asserting that the text affirmatively authorized the scheme that was imposed in the Final Award, or that such a pricing scheme was consistent with the Contract as a whole – a position never taken by Atlantic.[14] Quite to the contrary, the record

---

[13] As Atlantic's counsel indicated at the time, *see Atlantic Counsel*, 2919:1-2922:25, Atlantic's request that the Tribunal consider this form of relief, and eschew imposition of a [REDACTED] price, was prompted by GNA's threat to challenge any award that included such a price. 8/24/07 GNA PHB1 ¶¶ 8-9 (any award of a [REDACTED] price "is manifestly outside the jurisdiction of the Tribunal.").

[14] Atlantic noted during the arbitral proceedings that a [REDACTED] formula would undo the Contract's balancing of risks and impermissibly shift to Atlantic risks it had never agreed to assume. *See* 8/24/07 Atlantic PHB1 ¶ 90 & n.45. Thus, Atlantic made clear that, despite the absence of a literal prohibition against [REDACTED], such a remedy could not be squared with the Contract as a whole. Further, in its opening memorandum, Atlantic established that the Tribunal in fact exceeded the powers conferred by the Contract when it imposed [REDACTED]. The Tribunal did not simply revise the existing Contract Price (the only step it was authorized to take under Article 8.5(a)), it imposed a completely new pricing structure that completely alters the risk profile of the Contract, to Atlantic's detriment. *See* 4/16/08 Atlantic Mem 26-31. Atlantic explained these new, improper dynamics in great detail, *id.*, and GNA fails

shows that Atlantic consistently asserted that the imposition of a ▮▮▮▮▮ was "not necessary," was "unwarranted," "would not be appropriate," 8/24/07 Atlantic PHB1 ¶ 90 & n. 45, and was "not something that the Tribunal should do," *Atlantic Counsel*, 2641:6-12.

It is equally misleading for GNA to claim that Atlantic "acknowledged that a ▮▮▮▮▮ would be appropriate," 6/16/08 GNA Mem 28 (citing *Atlantic Counsel*, 2843:12-16). Immediately prior to the statement lifted out of context by GNA, counsel for Atlantic made clear – in response to the Tribunal's question ▮▮▮▮▮ – that the question "posits an inquiry that isn't appropriate for this Tribunal to decide … because none of us know what the circumstances will be in 2009" and because this is a "totally speculative exercise." *Atlantic Counsel*, 2841:13-22; *see* Tribunal Questions, Exhibit 18 to the 4/16/08 Cavoli Declaration. Far from endorsing the specific scheme adopted as permitted relief, Atlantic stated that ▮▮▮▮▮ should not even be considered. Counsel's subsequent comment, which GNA fixes on, reflected the uncertainty and confusion that could arise from a focus on ▮▮▮▮▮, given the fact that, in addition to being permitted to deliver to either Spain ▮▮▮▮▮, *see* Contract, Article 2.6, GNA was permitted to divert up to ▮ annually under Article 2.8, and also could engage in ▮ with other ▮ gas companies under Article 2.7. *See Atlantic Counsel*, 2843:3-23. Lifting counsel's words out of context cannot change the fact that Atlantic opposed ▮▮▮▮▮ and made that clear to the Tribunal.[15]

---

effectively to refute them, no doubt because GNA itself opposed ▮▮▮▮▮ on very similar grounds, *id.* 29 & n.55 (quoting statements from GNA and its counsel).

[15] *Telenor Mobile Communications v. Storm LLC*, 524 F. Supp. 2d 332 (S.D.N.Y 2007), cited by GNA, *see* 6/16/08 GNA Mem 14-15, is inapposite. In *Telenor*, Storm sought to vacate the award by arguing that the arbitrators had exceeded their authority by granting an equitable remedy when Telenor had only

### 2.    GNA

GNA also clearly opposed ■■■■■■■■■■■■■■■■■■■■■■■■ *See, e.g.*, 8/24/07 GNA PHB1 ¶¶ 70-120. GNA's current attempt to disavow the Parties' mutual agreement – by falsely claiming that it only opposed a price structure in which ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ 6/16/08 GNA Mem 32 – is pure fantasy. Among other things, GNA asserted:

- A "Contract Price based on a ■■■■■■■■■■■■■■ would do serious violence to the Contract language and render the Price Reopener clause entirely unworkable." 8/24/07 GNA PHB1 ¶ 70 (emphasis in original).

- "GNA has steadfastly defended the ■■■■■■■■■■■■■■ of the Contract for over a decade and *continues to do so in this case*." *Id.* ¶ 85 (emphasis added).

- The "structure of the Contract … is based entirely on ■■■■■■■■■" *id.*, ¶ 74, and "■■■■■■■■■■ Contract Price … *represents a fundamental deviation* from the bargain that the Parties made in 1995," *id.* ¶ 82 (emphasis added).[16] Further, GNA *expressly rejected* pricing based on ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ – the specific scheme imposed here. GNA clearly stated that "this question poses the idea that ■■■■■■■■■■■■■■■■■■■■■■ caused the market to move or ■■■■■■■■■■■■■■■■■■■■■■■■ may cause the opposite result," and "[t]o do that in either direction you got to *rewrite the contract*." *GNA Counsel*, 2845:17-22.[17]

---

requested money damages. *Telenor*, 524 F. Supp. 2d at 359. The Court ruled, however, that Telenor had, in fact, requested the relief imposed by the Tribunal. *Id.* at 359-360. That is not the case here.

[16] Nearly every specific reason articulated by GNA in opposition to ■■■■■■■■■■■■■■■■■ applies to the ■■■■■■■■■■■■■ imposed by the Tribunal. GNA argued that a price based on any ■■■■■■■■■■■■■■■ was improper because the Contract's force majeure provisions focus on events in Spain. *GNA Counsel*, 2902:2-2903:16. GNA claimed that, under a ■■■■■■■■■ approach, its obligation to maintain terminal capacity in Spain would impose unnecessary costs and make no sense. *Id.*, 2891:19-2892:6. And it asserted that the provisions regarding maintenance of the Spanish receiving facilities would be rendered incomplete and require revision. *Id.*, 2895:19-2896:4. Contrary to its present self-serving assertions, the concerns advanced by GNA were in no way assuaged by the Tribunal's remedy.

[17] Also meritless is GNA's assertion that Atlantic was afforded due process vis-à-vis the new pricing scheme. While GNA argues that there "was no part of the formula – *none* – that was not fully vetted by the Parties … prior to the issuance of the Final Award," 6/16/08 GNA Mem 18, the Tribunal specifically noted otherwise. The Tribunal stated that "the specific ■ formula contained in the Final Award *was*

## IV.   GNA IS NOT ENTITLED TO ATTORNEY'S FEES

GNA's continued claim for attorney's fees is itself vexatious. Because Atlantic has complied with the Final Award – a fact that GNA admits, see Amended Petition ¶¶ 15-16, attorney's fees are improper as a matter of law.[18]

Furthermore, it is senseless for GNA to claim that "there was no basis" for Atlantic: (1) to "initially refuse to abide by the Final Award" dated January 17, 2008, which somehow "forced" GNA to file its February 4, 2008 Petition; or (2) to move to vacate the Final Award. 6/16/08 GNA Mem 33-34; Amended Petition ¶¶ 13-14. Atlantic had 90 days (until April 16) to implement the Final Award, see Final Award ¶ 131, Atlantic was authorized to seek correction and clarification of the Final Award at any time before February 16 (which it did), see UNCITRAL Rules, Articles 35-36; and GNA had until January 17, 2011 to seek judicial recognition, see 9 U.S.C. § 207. Thus, Atlantic was wholly justified in proceeding in the manner and on the time table that it did (indeed, Atlantic would have been justified in not implementing any part of the Final Award until April 16), and GNA was not "forced" to do *anything* on February 4 – merely 11 business days after the Final Award was rendered.[19] Moreover, GNA

---

*not discussed* during the proceedings," and conceded that it "did *not* have all available pricing data and was not able to assess the actual impact of the retroactive calculation" using the ███. Correction Decision ¶ 24. Due process is not measured by length of hearing or volume of paper. It is "the opportunity to be heard at a meaningful time and in a meaningful manner," *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992), and Atlantic did not have this opportunity here.

[18] *Hunt v. Commodity Haulage Corp.*, 647 F. Supp. 797, 799 (E.D.N.Y. 1986) ("attorneys' fees are awarded *only when* the party challenging [the] award, without justification, *refuses* to abide by the arbitrator's decision") (emphasis added); see *Saudi Iron & Steel Co. v. Semicor USA, Inc.*, No. 97 Civ. 5976, 1997 U.S. Dist. LEXIS 20336, at *6-7 (S.D.N.Y. Dec. 27, 1997) (Cote, J.).

[19] GNA fails to dispute that – given Atlantic's compliance with the Final Award, and the terms of the New York Convention – it had no need to seek recognition of the Final Award in New York. *See* Atlantic 4/16/08 Mem 34, n. 64. Further, GNA's original Petition was clearly premature: as a result of the March 27, 2008 Correction Decision and Atlantic's timely compliance with the Final Award, GNA was forced to file an Amended Petition abandoning its request for a money judgment. GNA also abandoned its request for injunctive relief. *See id.* 31-32; Amended Petition ¶ 17. Given their premature and unnecessary nature, it is GNA's Petitions that lack justification and constitute harassment.

cannot come close to establishing that Atlantic's motion to vacate "is entirely without color and has been asserted ... for purposes of harassment or delay ..." *Browning Debenture Holders' Comm. v. Dasa Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977). To the contrary, Atlantic has established that vacatur is fully warranted and, in the meantime, has complied with the Final Award in good faith and in no way delayed its implementation.

## CONCLUSION

For the reasons stated, GNA's Amended Petition should be denied, Atlantic's motion for vacatur should be granted, and this Court should enter an order requiring GNA to refund to Atlantic: (1) ▆▆▆▆▆▆▆, the total difference between the original and new Contract Price on all Train 1 LNG sold to GNA from April 21, 2005 to January 17, 2008, which Atlantic paid to GNA on April 16, 2008; and (2) the total difference between the original and new Contract Price on all Train 1 LNG sold to GNA from January 17, 2008 to the date of the Court's order. If GNA's Amended Petition is granted, attorney's fees should be denied.

Dated: June 30, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: *[signature]* /JGC

Michael L. Hirschfeld (MH 6799)
James G. Cavoli (JC 7487)
Tamieka Spencer Bruce (TS 0911)
John K. White, Jr. (JW 3488)

1 Chase Manhattan Plaza
New York, New York 10005-1413
(212) 530-5000

Attorneys for Respondent
ATLANTIC LNG COMPANY OF
TRINIDAD AND TOBAGO

NY2:#4795788