UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
GAS NATURAL APROVISIONAMIENTOS, SDG,    :
S.A.,                                   :
                        Petitioner,     :    08 Civ. 1109 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
ATLANTIC LNG COMPANY OF TRINIDAD AND    :
TOBAGO,                                 :
                        Respondent.     :
                                        :
----------------------------------------X

Appearances:

For Petitioner:

Howard J. Nicols
Richard L. Mattiaccio
Steven Skulnik
Squire, Sanders & Dempsey L.L.P.
350 Park Avenue, 15th Floor
New York, New York 10022

George M. von Mehren
Stephen P. Anway
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, Ohio 44114

Steven B. Harris
Squire, Sanders & Dempsey L.L.P.
6200 Chase Tower, 600 Travis Street
Houston, Texas 77002

For Respondent:

Michael L. Hirschfeld
James G. Cavoli
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005-1413

DENISE COTE, District Judge:

Petitioner Gas Natural Aprovisionamientos, SDG, S.A. ("GNA") has filed this petition for confirmation of an arbitration award, and for attorney's fees and costs. Respondent Atlantic LNG Company of Trinidad and Tobago ("Atlantic") has opposed the petition and filed a motion to vacate the arbitration award. Atlantic principally disagrees with the arbitrators' solution to a dispute over a pricing formula. Unhappy with the arbitration panel's resolution of this hotly contested issue, Atlantic contends that the panel "exceeded its authority." For the following reasons, the arbitration award is confirmed and the motion to vacate is denied. Petitioner's request for attorney's fees is also denied.

BACKGROUND

Atlantic, a company organized under the laws of the Republic of Trinidad and Tobago, is a producer of liquefied natural gas ("LNG"). In July 1995, it entered into a sales contract with a Spanish company that was GNA's predecessor-in-interest. The long term supply contract provides for Atlantic to sell LNG to GNA that Atlantic produces at a facility in the Caribbean ("Train 1 LNG"), with deliveries beginning in 1999 and continuing for a term of twenty years. The contract further

2

specifies that GNA may transport the LNG to its receiving facilities in Spain or to a facility in New England ("New England Receiving Facilities").

Although GNA has an unlimited right under the contract to transport its deliveries of Train 1 LNG to the New England Receiving Facilities, at the time the contract was drafted, the parties expected that the Train 1 LNG would be consumed in Spain. The pricing formula specified in the contract is thus tied to the European energy market. The formula consists of a base price and a multiplier indexed quarterly to the European prices for certain substitute petroleum products.

The contract also includes a "price reopener" provision, whereby either party may request a revision of the pricing formula if it establishes that certain preconditions have been met. Specifically, Article 8.5(a) of the contract provides:

> <u>If at any time either Party considers that economic circumstances in Spain beyond the control of the Parties, while exercising due diligence, have substantially changed as compared to what it reasonably expected when entering into this Contract</u> or, after the first Contract Price revision under this Article 8.5, at the time of the latest Contract Price revision under this Article 8.5, <u>and the Contract Price resulting from application of the formula set forth in Article 8.1 does not reflect the value of Natural Gas in the Buyer's end user market</u>, then such Party may, by notifying the other Party in writing and giving with such notice information supporting its belief, request that the Parties should forthwith enter into negotiations to determine whether or not such changed circumstances exist and justify a revision of the Contract Price provisions and, <u>if so,</u>

3

> to seek agreement on a fair and equitable revision of the above-mentioned Contract Price provisions in accordance with the remaining provisions of this Article 8.5.

(emphasis added). If the parties are unable to agree upon a new pricing formula within six months, Article 8.5(f) permits either party to "submit the matter to arbitration for decision in accordance with the criteria set out" in the contract for price reopener proceedings. An arbitration clause in the contract provides generally for arbitration to be conducted in New York City and in accordance with the UNCITRAL Arbitration Rules.

After the parties entered into the contract in 1995, Spain's natural gas market was substantially liberalized. As Spanish gas prices decreased, the New England market became more attractive and GNA entered into a long term agreement to resell all of its Train 1 LNG deliveries at the New England Receiving Facilities.[1] Indeed, GNA has not delivered any Train 1 LNG to Spain since at least October of 2002. Citing these circumstances, Atlantic notified GNA on April 21, 2005 that it was seeking a revision to the contract price. Because the parties were unable to agree on a new formula, Atlantic demanded arbitration on October 21, 2005, requesting an upward revision to the contract price to reflect the value of natural gas in the New England market.

---

[1] This agreement is expected to continue until at least March 2009.

4

A three-person arbitration panel ("the Tribunal") was formed, and it held an initial conference with the parties on July 26, 2006. After denying a motion by GNA to dismiss Atlantic's price reopener claim, and in accordance with a schedule jointly submitted by the parties, the Tribunal conducted hearings over the course of twelve days in April, May, and June 2007. The parties submitted post-hearing briefs in August and October 2007, and they presented their post-hearing arguments before the Tribunal on November 14 and 15, 2007. On January 17, 2008, the Tribunal unanimously issued a 34-page Final Award, which it then clarified and corrected on March 27, 2008.[2]

In the Final Award, the Tribunal first determined that Article 8.5(a)'s requirements for a price reopener had been met. It proceeded to explain that "the Buyer's end user market is either Spain or New England depending on where the LNG is delivered." It concluded, therefore, that "since New England should be the basis for determining the value of natural gas when the Train 1 LNG is being sold in New England on a sustained basis, the Contract Price needs to include a New England Market Adjustment factor." Accordingly, the Tribunal decided to

---

[2] The corrected decision was issued in response to a request for clarification from Atlantic. Among other changes, the Tribunal agreed that current prices should be used in place of lagged prices in calculating the New England component of the Tribunal's new pricing scheme.

5

institute a two-part pricing scheme. First, it preserved the Spanish pricing formula contained in the contract but revised its base price component. Second, the Tribunal added a "New England Market Adjustment" for quarters in which more than a percentage identified in its decision ("the Percentage") of the Train 1 LNG is resold for delivery to the New England Receiving Facilities. This pricing scheme was made effective from April 21, 2005, the date on which Atlantic notified GNA that it was seeking a price reopener. As a result of this revised pricing scheme, Atlantic owed GNA over $70 million for the period from April 21, 2005 through December 31, 2007.[3] The Tribunal declined to impose interest payments on the retroactive adjustment, and it rejected the parties' respective requests for attorney's fees and costs, concluding that neither one could be regarded as "the unsuccessful party." GNA now seeks to confirm this Final Award, while Atlantic has moved to vacate it.[4]

---

[3] Atlantic paid this deficiency in full on April 16, 2008, and it has invoiced Train 1 LNG under the new contract price since the date of the Final Award.

[4] GNA initially filed its petition to confirm the Final Award on February 4, 2008, but it later submitted an amended petition nunc pro tunc after the Tribunal issued its corrections. In its original petition, GNA had sought injunctive relief, which Atlantic opposed on its motion to vacate. GNA has omitted from the amended petition its earlier request for injunctive relief.

DISCUSSION

Atlantic contends that the Final Award must be vacated because the Tribunal violated the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(3) and (4), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), Art. V, when it acted in excess of its authority, acted against public policy, and violated Atlantic's due process rights. "[I]t is well-settled that the FAA does not confer subject matter jurisdiction on the federal courts even though it creates federal substantive law." Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d Cir. 2000). Rather, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions under the [FAA]." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002) (citation omitted); see also Greenberg, 220 F.3d at 25. Jurisdiction over the petition in this action exists pursuant to the New York Convention, implemented by 9 U.S.C. §§ 201-08, because the Final Award involves foreign commerce and non-U.S. parties. See id. § 202; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997).[5]

The New York Convention "specifies seven exclusive grounds upon which courts may refuse to recognize an award."

---

[5] The parties agree that the enforcement provisions of the New York Convention apply to this confirmation proceeding.

Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005) (citation omitted). But because the arbitration took place in the United States, this action is also subject to the FAA's provisions governing domestic arbitration awards. Zeiler v. Deitsch, 500 F.3d 157, 164-65 (2d Cir. 2007). Section 10 provides the FAA's exclusive grounds for vacatur. Hall Street Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1403 (2008). Of these grounds, Atlantic relies principally on Section 10(a)(4) of the FAA, which permits vacatur "where the arbitrators exceeded their powers."[6] 9 U.S.C. § 10(a)(4). It relies, as well, on the public policy provision of the New York Convention, Art. V(2)(b) (permitting courts to refuse recognition of an award that "would be contrary to the public policy of that country"), and on the due process provisions of the FAA, 9 U.S.C. § 10(a)(3) (providing for vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"), and the New York Convention, Art. V(1)(b) (allowing courts to refuse recognition where "[t]he

---

[6] In the introductory pages of its brief, Atlantic also cites to Article V.1(c) and (d) of the New York Convention, apparently as additional bases for the excess of powers argument it makes. Atlantic does not, however, specifically rely on these subsections in its legal analysis.

8

party against whom the award is invoked was . . . unable to present his case").

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted). A court's review of an arbitration award is "severely limited" so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted). Arbitration awards are not reviewed for errors made in law or fact. Id. Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair & Co., 462 F.3d at 110 (citation omitted). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." Id. (citation omitted). Thus, "the showing required to avoid confirmation is very high," id. (citation omitted), and a party moving to vacate an arbitration award bears "the heavy burden of showing that the award falls within a very narrow set of

9

circumstances delineated by statute and case law." <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003).

I. Excess of Powers

The FAA allows for vacatur of an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).[7] The Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards pursuant to § 10(a)(4)." <u>Westerbeke Corp. v. Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted). A court's "inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." <u>DiRussa v. Dean Witter Reynolds Inc.</u>, 121 F.3d 818, 824 (2d Cir. 1997). "[A]s long as the arbitrator is even arguably construing or applying

---

[7] Article V(1)(c) of the New York Convention, as implemented by 9 U.S.C. § 207, similarly provides that a court may refuse to enforce an arbitration award if it "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." This defense "tracks in more detailed form" the excess of powers provision of the FAA, 9 U.S.C. § 10(a)(4), and should likewise "be construed narrowly." <u>Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier</u>, 508 F.2d 969, 976 (2d Cir. 1974). "Both provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration." <u>Id.</u>

10

the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); accord Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992). Thus, while an "arbitrator may not ignore the plain language of the contract, . . . a court should not reject an award on the ground that the arbitrator misread the contract." United Paperworkers, 484 U.S. at 38.

Atlantic describes two ways in which the Tribunal exceeded its authority. It asserts first that the Tribunal revised the contract price despite finding that the contractual conditions precedent had not been met. Second, Atlantic contends that, having decided to alter the contract price, the Tribunal impermissibly imposed a dual price scheme. In neither instance has Atlantic carried its heavy burden of showing that the Tribunal exceeded its powers. Each of these theories is analyzed in turn.

A. Conditions Precedent

Although the Tribunal explicitly stated in the Final Award that "[t]he requirements for a price reopener under Article 8.5(a) have been met," Atlantic argues that the Tribunal's assertion is belied by its analysis of the parties' contentions on this issue. Specifically, Atlantic had argued that the

11

liberalization of the Spanish natural gas market constituted an unexpected changed circumstance in Spain and thus satisfied the first precondition of Article 8.5(a). But in explaining the Final Award, the Tribunal stated that "[a]lthough the liberalized market was foreseen by both sides, the real test is whether those developments significantly disrupted the expected relationship between the Contract Price and the value of natural gas." Focusing on this statement, Atlantic argues that the Tribunal conflated the first precondition of Article 8.5(a) with the second, relying solely on a divergence between the contract price and the value of natural gas without first finding any unexpected changed circumstance in Spain that precipitated that discrepancy.

Atlantic's argument quibbles with the reasoning in the Tribunal's decision and does not suggest any abuse of power by the Tribunal. It is undisputed that the Tribunal had the power to decide whether the requirements for a price reopener had been met; indeed, the Tribunal was specifically assigned this responsibility. Atlantic has conceded this point since it was Atlantic that initiated the price reopener and arbitration and argued strenuously before the Tribunal for a new price formula. That it now finds fault with the explanation given by the

Tribunal in agreeing with Atlantic is irrelevant under
§ 10(a)(4).[8]

Atlantic's additional arguments concerning the contractual conditions precedent -- made in footnotes -- that the Tribunal manifestly disregarded the law and violated public policy are similarly unavailing. Even if the doctrine of "manifest disregard of the law" could be said to have survived the Supreme Court's recent decision in Hall Street Associates, 128 S. Ct. at 1403-04, and thus remain available as an avenue to attack an arbitration award, the Tribunal did not -- as Atlantic contends -- ignore or refuse to apply the preconditions set forth in the contract. See Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 129 (2d Cir. 2003). To the contrary, the Final Award explicitly describes the requirements of Article 8.5(a), and it

---

[8] Although Atlantic's attack on the Tribunal's Award could not succeed even if Atlantic were able to show that the Tribunal had misread the contract, it should be noted that Atlantic has not identified a flaw in the Tribunal's reasoning. Article 8.5(a) sets out two preconditions for revising the contract price. The first is an unexpected change in "economic circumstances in Spain." Atlantic argues that the Tribunal could not have found this first condition satisfied since its opinion notes that the parties foresaw the deregulation of the Spanish LNG market. These two findings, one implicit and the other explicit, are not necessarily inconsistent. Even if deregulation was foreseen, other changes in the market for LNG could be unexpected ones. Indeed, Atlantic itself had argued to the Tribunal that the impact of U.S. prices on the Spanish market price of LNG was unexpected and satisfied the first precondition of Article 8.5(a).

13

then applies them in a separate section labeled "Application of Contract Provisions to the Issues Raised in this Proceeding."

Similarly, Atlantic asserts that, by effectively merging the two conditions of Article 8.5(a), the Tribunal contravened the "fundamental and well established public policy" in the United States "that a contract be applied and enforced as written." "[C]ourts may refuse to enforce arbitral awards only in those rare cases when enforcement of the award would be directly at odds with a well defined and dominant public policy." Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 46 (2d Cir. 1997); see also United Paperworkers, 484 U.S. at 43 ("At the very least, an alleged public policy must be properly framed . . . , and the violation of such a policy must be clearly shown if an award is not to be enforced."). The Tribunal's decision is plainly grounded in its reading of the parties' contract and thus not at odds with any public policy identified by Atlantic.

B. Pricing Scheme

Atlantic next argues that the Tribunal exceeded its powers by imposing a pricing scheme that -- in Atlantic's view -- skewed the original bargain between the parties and effectively rewrote their contract. Specifically, the new "dual price structure," which provides one price when more than the Percentage of the Train 1 LNG is delivered to the New England

14

Receiving Facilities, and another price otherwise, gives GNA the unbargained-for ability to determine which of two quarterly prices will apply to all shipments merely by shifting its Train 1 LNG deliveries.

This contention is also insufficient to permit vacatur of the Tribunal's decision. It is undisputed that the Tribunal was specifically charged with the duty to revise the pricing scheme once it determined that the contractual preconditions were met. The Tribunal having made that determination, Article 8.5(a) required it to reach "a fair and equitable revision" of the contract price. Neither this standard nor any other contractual provision set a structural limitation on permissible price revisions. Indeed, Atlantic's submissions to the Tribunal acknowledged the Tribunal's broad authority in this regard. In them Atlantic opined that the relevant contractual terms "do not appear to expressly limit this Tribunal's award to the imposition of a single pricing formula." Atlantic's argument concerning the dual pricing formula is better understood as a challenge to the merits of the Tribunal's decision. Such a challenge is unavailing since the Court does not review arbitration awards for legal or factual errors.

Finally, Atlantic emphasizes the parties' purportedly shared belief, expressed to the Tribunal during its proceedings, that a dual price structure would be improper. In light of this

15

agreement between the parties, Atlantic argues, the Tribunal did not have the authority to impose a two-price formula.  Even though "[p]arties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission," Hill v. Staten Island Zoological Soc'y, Inc., 147 F.3d 209, 214 (2d Cir. 1998), the parties may not add grounds to vacate or modify an arbitration award.  Hall Street Assocs., 128 S. Ct. at 1405.  Thus, to vacate the award Atlantic must show that the Tribunal was not acting within the scope of its authority.  United Paperworkers, 484 U.S. at 38.

Atlantic has not shown that the parties reached any agreement that limited the Tribunal's authority to impose a dual price structure.  It is true that when the Tribunal requested post-hearing briefing from the parties as to "[w]hether it is possible to have two different prices based on two different markets," both parties argued against such a scheme.  GNA argued in favor of a single Spanish price for all deliveries; Atlantic contended that a single price based on the New England market should apply to all deliveries.[9]

---

[9] Under the new scheme imposed by the Tribunal, one price does apply to all deliveries irrespective of their location; the only difference is that the singular price to be applied to all deliveries depends on the quantity of deliveries made to the New England Receiving Facilities.

16

These arguments over the wisdom of a dual pricing scheme, however, cannot be reasonably construed as an agreement to restrict the Tribunal's authority to adopt that scheme. Indeed, in opposing the Tribunal's suggestion of a two-price system, Atlantic limited its analysis to "the present facts," while accepting that under certain circumstances "it might, in theory, be possible to 'have two different prices based on two different markets.'" Thus, Atlantic foresaw that a dual scheme would be permissible, and it points to no stipulation by the parties depriving the Tribunal of the power to fashion such a price revision.

II. Due Process

Atlantic argues briefly that the Tribunal violated Atlantic's due process rights.[10] The FAA provides for vacatur "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Similarly, the New York Convention, Art. V(1)(b), permits courts to reject arbitration awards where "the party against whom the

---

[10] Atlantic largely abandons its due process argument in its reply brief, relegating it to a footnote.

award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." The Second Circuit has explained that these provisions protect "the fundamental requirement of due process," which is "the opportunity to be heard at a meaningful time and in a meaningful manner." Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 146 (2d Cir. 1992) (citation omitted).

Atlantic was not denied the opportunity to be heard in a timely and meaningful manner. The arbitration involved substantial amounts of briefing, as well as twelve days of hearings and two days of post-hearing argument. Atlantic's only complaint is that, because "[t]he Tribunal never disclosed any terms of the dual pricing scheme prior to issuing the Final Award, . . . Atlantic was unable to present evidence or argument regarding that scheme." As noted above, however, the parties were invited to provide post-hearing briefing on the possibility of including "two different prices based on two different markets." Having requested these supplemental submissions and conducted extensive hearings, the Tribunal was under no obligation to reveal its decision to the parties and accept additional comments before issuing the Final Award. Its failure to do so in these circumstances does not constitute a violation of due process.

III. Attorney's Fees

Finally, GNA seeks attorney's fees for the confirmation proceeding. It does not point to any statutory or contractual authority for such legal fees, instead relying on the Court's inherent equitable powers.

> Pursuant to its inherent equitable powers, . . . a court may award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons. As applied to suits for the confirmation and enforcement of arbitration awards, . . . when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.

Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985) (citation omitted).

Atlantic's motion to vacate the arbitration award does not present any argument of merit. On the other hand, Atlantic has complied with the Tribunal's decision pending the outcome of this confirmation action: It paid the retroactive deficiency due under the amended version of the Final Award on April 16, 2008, which was within the ninety-day period set by the Tribunal. It has also invoiced Train 1 LNG in accordance with the new contract price since January 17, 2008, the date the Final Award was issued. In light of these facts, this Court does not find that it is appropriate to award attorney's fees.

CONCLUSION

The February 4, 2008 petition to confirm the arbitration award is granted. The April 16, 2008 motion to vacate is denied. Petitioner's request for attorney's fees and costs is denied. The Clerk of Court shall enter judgment for the petitioner and close the case.

SO ORDERED:

Dated:   New York, New York
         September 16, 2008

                                        _____
                                              DENISE COTE
                                        United States District Judge